UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOB OPPORTUNITIES FOR WOMEN INC.,            **NOT FOR PUBLICATION**

                        Plaintiff,           MEMORANDUM
                                             AND ORDER
     -against-
                                             07 CV 2962 (RML)
CAROLINA CASUALTY INSURANCE
COMPANY,

                        Defendant.
----------------------------------------------------------X
LEVY, United States Magistrate Judge:

        This diversity action arises out of a construction project (the "project") at the Creedmoor Psychiatric Center in Queens, New York. In connection with the project, TCL Contractors Corporation ("TCL") entered into a written agreement (the "principal contract") with the Dormitory Authority of the State of New York ("DASNY"). TCL and defendant, Carolina Casualty Insurance Company ("defendant"), executed a labor and material payment bond (the "bond"), with TCL as contractor and defendant as surety. The bond obligated defendant to pay for labor and material furnished in connection with the project if TCL failed to do so. Plaintiff, Job Opportunities for Women Inc. ("plaintiff"), entered into a written agreement with TCL (the "subcontract") in which plaintiff agreed to perform specific masonry work at the project.

        In this action, plaintiff seeks to recover from defendant payments it claims it is owed for work performed and materials furnished in connection with the project. Defendant has raised four affirmative defenses, all of which allege culpability on plaintiff's behalf partially or completely barring recovery.

By stipulation dated May 21, 2009, the parties consented to trial before a magistrate judge. A bench trial took place before me on July 20, 2009, at which three witnesses testified: Michael O'Sullivan ("O'Sullivan"), the president of TCL; Saverio Minucci ("S. Minucci"), plaintiff's general field superintendent; and Ignazio Minucci ("I. Minucci"), part owner of plaintiff. For the reasons stated below, I find in favor of plaintiff, in the total amount of $111,878.20 (damages of $86,234.62 plus prejudgment interest of $25,643.58).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The subcontract is in the amount of $1,875,000.00, subject to additions and deductions. (See Ex. 5 (Subcontract, dated Nov. 4, 2004).) TCL has paid plaintiff $1,833,838.14 on the subcontract. (See, e.g., Ex. 32 (TCL's summary of subcontract as of Dec. 20, 2007).) Additions and deductions to work were communicated through "change orders," i.e., instructions to plaintiff to perform different work than specified in the original plans and specifications. (See, e.g., Trial Transcript ("Tr.") at 16-17.)

The disputes in this case fall into three categories: (1) "approved" change orders, (2) "pending" change orders, and (3) backcharges and credits. I will discuss each category in turn.

**A.  Approved Change Orders**

The parties agree that there are twelve approved change orders for which plaintiff is entitled to payment from defendant. (Compare Plaintiff's Proposed Post-Trial Findings of Fact and Conclusions of Law, dated July 29, 2009 ("Pl.'s Mem."), at 3, with Defendant's Proposed Post-Trial Findings of Fact and Conclusions of Law, dated Sept. 17, 2009 ("Def.'s Mem."), at 3.) They also agree about the values of change orders 23, 24, and 25, which total

$24,134.24. (Compare TCL's Contract Summary, dated Dec. 20, 2007 ("TCL's Summary"), introduced as part of Ex. 32, with Change Orders 23-25, dated Mar. 15, 2006, introduced as parts of Exs. 7, 12, and 18.)[1]

The parties do not agree, however, about the values of the remaining nine change orders. In each of those instances, plaintiff "provided an original change order and then revised it in accordance with the request of DASNY or TCL." (Pl.'s Mem. at 3; accord Def.'s Mem. at 3.) Plaintiff contends that the "change orders were approved based on these revisions." (Pl.'s Mem. at 3.) In support, plaintiff submitted change orders totaling $60,062.49. (Change Orders 22, 28-29, 31-32, 34, 39, 44-45, dated Mar. 15, 2006, introduced as parts of Exs. 6, 8-11, 15-17, 19.) Defendant does not dispute that these amounts were valid as of March 2006, but it argues that the change orders were approved subject to negotiations with and approval by DASNY, and that the final approved total for them was $54,498.07. (See Def.'s Mem. at 3.) In support, defendant submitted a contract summary it prepared in December 2007. (See TCL's Summary.) Defendant did not, however, explain the origin of the figures in that summary or demonstrate that plaintiff had agreed to or received notice of the reductions. (See, e.g., Tr. at 22 (O'Sullivan testifying that "I'm going to venture a guess, that it's probably the negotiated amount between us and the government"); Tr. at 27, 34 (O'Sullivan speculating that documentation supporting the lower figures exists).) In the absence of any support for the reductions, I find by a preponderance of the evidence that plaintiff is entitled to $60,062.49 for the nine disputed

---

[1] There are discrepancies of less than one dollar each between the change orders and the corresponding line items on TCL's Summary. In the absence of clarification from the parties, I have relied on the cent amounts listed in the change orders.

-3-

change orders. In addition, plaintiff is entitled to $24,134.24 for the three agreed-upon change orders. In total, I find that plaintiff is entitled to $84,196.73 for the approved change orders.

### B. Pending Change Orders

TCL's Summary lists two "pending" change orders, and plaintiff seeks payment for both. (TCL's Summary.) Defendant concedes that plaintiff is entitled to recover $7,154.06 for pending change order "I." (See Def.'s Mem. at 12.)

Pending change order "H" concerns a six-inch solid concrete masonry unit wall (the "CMU wall") that plaintiff furnished and installed, for which plaintiff seeks $21,591.90. (See Pl.'s Mem. at 4.) Defendant argues that neither the subcontract itself nor any valid change order called for plaintiff to construct such a wall. (See Def.'s Mem. at 4.) At trial, plaintiff showed that it had presented TCL with an invoice for its work on the CMU wall. (See Ex. 13.) It did not, however, provide any documentation to substantiate its claim that TCL had requested or approved the work. (See Tr. at 105-06, 125-27.) Nor does the fact that TCL's Summary lists it as a pending change order prove that TCL owed plaintiff payment for it.

Accordingly, I find that plaintiff is entitled to recover $7,154.06 for pending change order "I" but has not met its burden of demonstrating that it is entitled to recover payment for pending change order "H."

### C. Backcharges and Credits

By its affirmative defenses, defendant alleges that the amount owing to plaintiff should be reduced to account for six backcharges and credits.[2] (See Amended Answer, dated

---

[2] TCL initially assessed two additional backcharges against plaintiff, one for $1225.00 and the other for $4216.00 (see Ex. 32), but defendant has since conceded that plaintiff owes no money for either backcharge (see Def.'s Mem. at 8-9, 13).

Feb. 29, 2008, at ¶ 7.) These fall into two categories: work under the subcontract performed by entities other than plaintiff, and payments or credits made on behalf of plaintiff.

### 1. Subcontract Work Allegedly Performed by Others

Two of the backcharges fall into this category. First, defendant seeks to reduce the amount it owes plaintiff under the subcontract by $45,708.00 to account for firestopping work performed by a third party, Hailey Insulation Corporation ("Hailey"). (See Def.'s Mem. at 6.) Plaintiff argues that the subcontract did not require it to perform firestopping work, and that its payment thus should not be reduced. (Pl.'s Mem. at 6.)

Among the "exclusions" listed in the subcontract is "fire-stopping, fire-sealing, caulking[,] except thermal fiber." (Rider A to subcontract, introduced as part of Ex. 5.) At trial, I. Minucci testified that "fire stopping is excluded from the scope of [plaintiff's] work," explaining that "[m]asons don't do that." (Tr. at 162.) In his testimony, O'Sullivan countered that "thermal fiber" is a fire-stopping substance that masons typically "trowel on" to the top of a wall they have built. (Tr. at 183, 198.) Also in evidence is an email from Sue Minucci, defendant's president, to a representative of TCL, stating that "JOW DID PERFORM THE FIREPROOFING AS PER OUR CONTRACT." (Ex. 39 (Email of Sue Minucci, dated Sept. 1, 2006).) Defendant characterizes that email as an acknowledgment that plaintiff had a contractual obligation to perform fireproofing. That interpretation, however, is inconsistent with both parties' position that plaintiff did not perform the work itself. (See, e.g., Tr. at 183, 197-98 (defense counsel stating that Hailey performed the work); Pl's Mem. at 6 ("Firestopping is excluded from Job Opportunities' Subcontract scope of work."); see also Ex. 30 (payments from TCL to Hailey).) I. Minucci offered an alternative explanation: that Sue Minucci's use of the

term "fireproofing" was a "misprint . . . because we didn't do fireproofing," and that her intended meaning was that plaintiff prepared the top of the wall it erected for "somebody else to do the fireproofing." (Tr. at 129-30.) Although it is something of a close call, I find that plaintiff's and defendant's accounts are equally convincing and that defendant has therefore not carried its burden of persuasion on this affirmative defense.

Second, defendant contends plaintiff failed to meet its contractual obligation to complete its punch-list work to DASNY's satisfaction, and that defendant is therefore entitled to withhold $20,000.00 until DASNY is satisfied with the work and pays that amount to TCL. (Def.'s Mem. at 6-7, 13.) Plaintiff contends it has completed its work under the subcontract. (See Pl.'s Mem. at 6-7; Ex. 23; Tr. at 94-97.) At trial, O'Sullivan conceded that he could not show any uncompleted punch-list work (Tr. at 212) and that TCL and plaintiff had—in his opinion but not in DASNY's—completed all of their punch-list work (Tr. at 231). Under these circumstances, defendant cannot backcharge plaintiff under a "pay-when-paid" provision, for the reasons I explained in my denial of defendant's summary judgment motion. (See Tr. at 252-59.)

### 2. Payments and Credits Made on Behalf of Plaintiff

With the remaining four backcharges and credits, defendant seeks to recover the costs of repairing damage at the project site allegedly attributable to plaintiff and the value of work descoped by agreement.

First is a $3,099.00 payment to a third party to repair insulation allegedly damaged by plaintiff. (See Def.'s Mem. at 7; Ex. 26.) This insulation was on a rooftop, where it was protected by a stainless-steel covering, which was also allegedly damaged. (Tr. at 219-20.) Defendant's claim is supported by a letter from the construction manager, Skanska, stating that

the "damage was directly attributable to TCL's masonry contractor, who damaged the material during installation of masonry at the roof level" (Memorandum of Chris Viola, dated Mar. 30, 2006, attached to Ex. 26), and by O'Sullivan's testimony—to which plaintiff did not object—that "Jim Seaford of Skanska actually said he had witnessed a Job Ops labor guy standing on it, and they actually caused the damage" (Tr. at 192). Plaintiff argues that it cannot be liable for such damage on the grounds that "protection" is excluded from the scope of the subcontract, defendant did not show that the stainless-steel covering was damaged, and TCL did not ask plaintiff to repair the insulation. (Pl.'s Mem. at 7-8; see also Ex. 5 at 13.) Plaintiff's arguments are unpersuasive: surely the "protection" exclusion did not entitle plaintiff to stomp roughshod on delicate material at the project site; the two Skanska remarks are sufficient to meet defendant's burden on this issue; and plaintiff nowhere explains why it should have been given a chance to conduct repairs outside its area of specialty. Accordingly, I find for defendant on this backcharge.

       Second is a $950.00 payment to a plumbing company to clean a sewer line clogged with construction debris and dirt fill. (See Def.'s Mem. at 7-8; Ex. 27; Tr. at 192-93.) A Skanska employee wrote that plaintiff was "mixing their cement and sand for the masonry work" over a manhole that "was cleaned previously on 11/25 and is filled with masonry materials again." (Email of James Siefert, dated Dec. 2, 2005 ("Siefert Email"), attached to Ex. 27.)[3] Plaintiff notes that "Mr. O'Sullivan, defendant's sole witness, did not see [plaintiff] mix concrete on top of the manhole" (Plaintiff's Responses to Defendant's Proposed Post-Trial Findings of Fact and Conclusions of Law, dated Sept. 27, 2009, at 2), but the Siefert Email is

---

[3] The parties agreed that the Siefert Email was admissible. (See Tr. at 7-8, 188.)

-7-

enough to meet defendant's burden of production. Plaintiff also argues that it was not responsible for protecting the manholes, which "did not have their castings in place and were only covered with plywood." (Pl.'s Mem. at 8.) But regardless of whether plaintiff had a contractual duty to provide protection for the manholes, and regardless of the manholes' incomplete condition, plaintiff has offered no rebuttal of O'Sullivan's convincing remark that "it would come as common sense . . . [that] you don't mix cement on top of the manhole" (Tr. at 222), and I find for defendant on this backcharge.

Third is a $429.03 payment for a patch kit to repair damaged bricks. (See Sales Contract, dated Sept. 1, 2006, attached as Ex. 29; Tr. at 194.) At trial, O'Sullivan testified that although he did not know whether plaintiff had damaged the brick itself, plaintiff was responsible for completing the masonry work satisfactorily. (Tr. at 227.) Plaintiff notes that on August 10, 2006, it wrote to TCL to state that it had completed all of its punch-list work (Letter of Sam Minucci, dated Aug. 10, 2006, attached as part of Ex. 23); additionally, O'Sullivan conceded that as of the date of the trial, all work on the subcontract was complete (Tr. at 231). But neither of those facts frees plaintiff from liability: the first does not show that TCL accepted plaintiff's representation that work was complete, and the second does not show that work was complete before the purchase of the patch kit. Accordingly, I find for defendant on this backcharge.

Last is a credit for "descoped work," i.e., work required of plaintiff under the original subcontract but later eliminated by agreement. Defendant values the descoped work at $41,800.00; plaintiff does not dispute that it owes a credit for the descoped work but values it at only $10,653.39. TCL calculated defendant's figure on a price-per-square-foot basis (see Ex.

25), while plaintiff calculated its figure on a time-and-material basis (see Ex. 20). Defendant concedes that the subcontract mandates time-and-material-basis pricing, but argues that "time and materials are determined by the scope of the work involved and by [plaintiff's] own calculations, their usual cost for time and materials was well in excess of" their preferred value for the credit. (Def.'s Mem. at 11.) TCL calculated defendant's figure by multiplying the area of the descoped work, 1672 square feet, by a rate of $25 per square foot. (Def.'s Mem. at 10.) O'Sullivan testified that his selection of $25 per square foot was "completely arbitrary" but was informed by his lengthy experience in the construction industry. (Tr. at 205-06.)

I find plaintiff's value for the credit unreasonably low. Plaintiff values the descoped work at $6.37 per square foot, far below the amounts it charged for other portions of the project, some of which fell in the range of approximately $20 to $80 per square foot. (See Tr. at 59-61; see also Tr. at 154 (I. Minucci unable to identify any other aspect of the project priced so low).) Plaintiff also places weight on the absence of a written rejection of its memorandum presenting the $10,653.39 figure (see Pl.'s Mem. at 11 (citing Ex. 20; Tr. at 211)), but also missing is any evidence or even any claim that TCL ever accepted that figure. I find defendant's value, on the other hand, to be well within reason, and defendant is accordingly entitled to a credit in the amount it requests.

In total, I find that defendant is entitled to $46,278.03 in backcharges.

**D.     Interest and Attorney's Fees**

New York State Finance Law § 137(4)(c) provides that:

> In any action on a payment bond furnished pursuant to this section, any judgment in favor of a subcontractor or material supplier may include provision for the payment of interest upon the amount recovered from the date when demand for payment was made

pursuant to the labor and material payment bond and provided
further that the court may determine and award reasonable
attorney's fee to either party to such action when, upon reviewing
the entire record, it appears that either the original claim or the
defense interposed to such claim is without substantial basis in fact
or law.

An award of prejudgment interest is appropriate in this case. Prejudgment interest shall be recovered from October 11, 2006, the date plaintiff made demand on the bond. (See Ex. 35.) The statutory interest rate is nine percent per year. N.Y. C.P.L.R. § 5004.

No claim or defense in this litigation was so without basis in fact or law as to merit an award of attorney's fees.

### E. Total Damages

Based on the foregoing, plaintiff is entitled to recover $86,234.62, plus interest of nine per cent per year from October 11, 2006 until January 29, 2010. This amount is calculated as follows:

| | |
|---|---|
| Subcontract Amount | $1,875,000.00 |
| Approved Change Orders | $ 84,196.73 |
| Pending Change Orders | $ 7,154.06 |
| (Payments) | ($1,833,838.14) |
| (Backcharges) | ($ 46,278.03) |
| Subtotal: | $ 86,234.62 |
| Interest: | $ 25,643.58 |
| **Total:** | **$ 111,878.20** |

## CONCLUSION

WHEREFORE, IT IS ORDERED that plaintiff Job Opportunities for Women Inc. recover from defendant Carolina Casualty Insurance Company the principal amount of $86,234.62, plus interest at nine per cent per year from October 11, 2006 through January 29, 2010, for a total award of $111,878.20.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated: Brooklyn, New York
January 29, 2010

/s/
ROBERT M. LEVY
United States Magistrate Judge